16 N.J. Super. 231 (1951)
84 A.2d 42
ELIZABETH M. REEVES, PLAINTIFF,
v.
THE CITY OF JERSEY CITY, THE FIREMEN'S AND POLICEMEN'S PENSION FUND COMMISSION OF THE CITY OF JERSEY CITY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided October 30, 1951.
*233 Mr. Louis G. Morten, attorney for plaintiff..
Mr. John B. Graf, attorney for defendants (Mr. Louis E. Saunders, of counsel).
DREWEN, J.C.C.
This matter is before the court on a separate trial of the law issues in the case (Rules 3:42-2; 3:30-2 and 5:2-1).
Plaintiff sues as the widow of Edward C. Reeves, deceased. The case pleaded is that Reeves, having served the prescribed time in good standing as a member of the Jersey City Police Department, was in 1936 retired therefrom at half-pay; that at the time of his death in December, 1940, he was still in good standing as a pensioner of the defendant pension fund; that plaintiff has not remarried and that all other facts and circumstances legally necessary to plaintiff's qualification under R.S. 43:16-3 as successor to her husband's pension rights at the time of his death were and are in all respects existent; and that notwithstanding the premises defendants have at all times failed and refused to recognize or satisfy plaintiff's right to the pension. Plaintiff demands as damages *234 the accrued arrearage of pension payments, with interest, and also that judgment be entered "in such form as may be required to establish the right of the plaintiff as the widow of said Edward C. Reeves, deceased, to receive a pension for so long as she remains unmarried equal to one-half of the pay of her deceased husband at the time of his retirement but not exceeding one thousand dollars, payable in such manner as pensions are paid that become payable under the provisions of R.S. 43:16-3."
There have been three prior suits by this plaintiff against legal entities and persons charged by her at the time as responsible for the administration of the pension fund respecting which her rights were and are claimed. The issues of law to be decided arise from the defense that in consequence of either or all of these prior litigations the subject matter of the present suit is res judicata or is similarly barred by estoppel.
The earliest of these prior suits was instituted in June, 1941, in the Second District Court of Jersey City and was brought to recover the accrued pension arrearages claimed as of that date. One of the defenses interposed declared that plaintiff was not the widow of Reeves, it being alleged that the marriage between them had been dissolved by a decree of divorce entered in the State of Florida at the suit of the husband on May 9, 1940. Whether that defense was finally established on the merits is still an open question and constitutes the core of the instant problem, as will appear.
Of the other two suits mentioned, one was by a bill in equity; the other was an action in the New Jersey Supreme Court. The records in these cases will be reviewed in their order.
The bill in Chancery was filed in October, 1941. In addition to the basic allegations bearing on her claimed right to the pension, plaintiff there pleaded that the Florida divorce by which she had been confronted in the district court action was the product of fraud, having been procured by perjured testimony, and that no process had been served on her in the *235 cause. There was a motion to dismiss the bill on the grounds that (1) it disclosed no cause of action, this for the stated reasons that plaintiff had an adequate remedy at law, that the deceased husband's second wife was a necessary party to the suit and that plaintiff, as complainant in equity, was guilty of laches; (2) the Court of Chancery lacked jurisdiction; (3) the subject matter of the bill in consequence of the aforementioned action in the district court was res judicata. The motion to strike was granted and the bill dismissed. The grounds for the dismissal as set forth in the order therefor were that the bill "discloses no cause of action and that this Court has no jurisdiction to grant the relief prayed for." This determination can mean only that the court adjudged the bill of complaint to be deficient in its failure to show a cause in equity; in other words, that the court was without jurisdiction in the case as made by the bill. Manifestly, there was no disposition on the merits, and this result of plaintiff's attempt to litigate her claim in equity constitutes no bar to her present action nor one that renders its subject matter res judicata.
Plaintiff's action in the New Jersey Supreme Court was brought in May, 1945, after the dismissal of the Chancery suit. There was a motion to strike the complaint. It was decided on the ground, inter alia, that the City of Jersey City, a defendant therein, was neither a proper nor a necessary party. Circuit Judge Thomas Brown, before whom the motion came as Supreme Court Commissioner, filed a memorandum which states in part: "The motion to strike the complaint against the defendant, City of Jersey City, is granted as that defendant has no adverse interest against the plaintiff in the controversy and is not a necessary party for the complete determination of any question involved in the suit." In accordance with leave given, an amended complaint was filed. The city again was made a defendant and the former controversy renewed. Again a motion to strike was made and granted, this time for the reason, as stated in a second memorandum: "* * * that the Treasurer of the *236 city of Jersey City * * * is the custodian of the Pension Fund and for the other reasons set forth in the decision of this Court on a motion to strike the original complaint in this cause." There was an order striking the amended complaint as to the city and final judgment in favor of the city was entered accordingly. As to the remaining defendants the Supreme Court suit ended in a voluntary discontinuance on March 14, 1946. The record of the action thus reviewed does constitute a bar to the present suit as against the City of Jersey City, but can be given no other effect upon the question here in dispute.
In the present case there have been certain motions which, while they do not influence the question for decision, should perhaps be noted for completeness of statement. First, the defendants moved to strike the complaint. That was denied. Later the plaintiff sought, by motions for summary judgment in whole or in part, to overcome the defense of res judicata now in question. These also were denied. Needless to say, the results of these motions changed nothing.
Returning now to the suit in the district court. The judgment record there is as follows: "Judgment in the above-entitled cause was entered in the (Second) District Court of Jersey City, Lewis G. Hansen, Esq., Judge, in favor of the said Defendant Firemen's and Policemen's Pension Fund Commission, and against the said Plaintiff Elizabeth M. Reeves, on the 24th day of September, A.D. 1941." Plaintiff urges three reasons why this judgment is not a bar, viz.: (a) different parties; (b) different causes of action; (c) the judgment record is in truth a record not of a decision on the merits but of a strict ruling on a question of jurisdiction. Concerning the first and second of these reasons, it is my opinion that as between the action in the district court and that before us there is substantial identity of parties as well as of causes pleaded, sufficient to constitute that action a complete bar to the present one, did we not have the remaining question with respect to the true import of the judgment record in dispute.
*237 In Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704, 706 (E. & A. 1948) the court said:
"The judgment of a court of competent jurisdiction on a question of law or fact, or on a question of mixed law and fact, once litigated and determined, is, so long as it stands unreversed, conclusive upon the parties and their privies, not only as to the subject of the particular action but also as to all future litigation touching the subject matter. This is so even though the prior and subsequent litigations involve different things, if there be substantial identity in the subject matter of the two. Where the right to relief in the one suit shall rest upon the same point or question which, in essence and substance was litigated and determined in the prior suit, the parties and their privies are concluded, `not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' * * * Privity in the sense of this principle connotes such connection in interest with the litigation and the subject matter as in reason and justice precludes a relitigation of the issue. In a word, a litigant is entitled to his day in court but not to relitigate an issue once determined by a valid judgment."
See also Hoffmeier & Son v. Trost, 83 N.J.L. 358, 360 (Sup. Ct. 1912); Windolph v. Lippincott, 107 N.J.L. 468, 472 (E. & A. 1931); City of Paterson v. Baker, 51 N.J. Eq. 49 (Ch. 1893); In re Walsh's Estate, 80 N.J. Eq. 565, 569 (E. & A. 1909).
The basic issues in the district court were the same as those here. Plaintiff there contended that she was the lawful widow of Reeves and that as such the legal requirements had been met entitling her to receive the pension. She makes the same contentions here. Plaintiff seeks to distinguish the district court suit from the present one on the further ground that here she has joined as defendants parties different from and additional to those in the district court. The point is not well taken. Assuming a meritorious determination in the district court, the parties defendant in the two suits would seem to be in sufficient privity to preclude relitigation. See Hudson Transit Corp. v. Antonucci, supra. See also Crossley v. Briscoe, 117 N.J.L. 474 (E. & A. 1937).
There would appear to be no doubt that the district court did have jurisdiction to try the case before it, including *238 the issue of plaintiff's status as surviving spouse of the deceased pensioner. The question is whether the jurisdiction was exercised. If it was, the district court judgment is a bar to the present suit. If not, the judgment is not a disposition of the case on the merits and is therefore without effect as an adjudication of the issues here. "Under the District Court acts * * * this court is a court of record, and although the amount of its jurisdiction is limited, it has general jurisdiction in all cases up to this amount, except where title to lands is in question." McDevitt v. Connell, 71 N.J. Eq. 119, 121 (Ch. 1906). The principle that courts of law having general jurisdiction can determine whether a foreign divorce, secured in his lifetime by the spouse of a plaintiff-widow claiming the accrual of his pension to her, was a valid divorce or was obtained in such manner as to be a fraud upon the courts of this State, has been affirmatively acted upon by our Superior Court and the precedent is binding here. Todd v. Policemen's, etc., Fund of City of Newark, 14 N.J. Super. 508 (Law Div. 1951).
Is it true, as plaintiff contends, that the judgment record in the district court is actually no more than a record of the court's strict ruling on a point of jurisdiction to the exclusion of all other issues; or does it record a decision on the merits? On its face the record might well be of either import, there being nothing to show but that there was a single form of entry in use for both. Ordinarily, of course, the judgment would import a disposition on the merits, but it is my view that this whole problem must be dealt with in the light of the circumstances and upon the considerations hereinafter discussed. Plaintiff has already attempted in the present action to resolve the uncertainty. Requests for admissions were served upon defendants under Rule 3:36-1, and had the admissions been made they would have established the fact that the disputed record truly signifies no more than the refusal of the court to exercise its jurisdiction because of the errant view that it did not have it. As matters turned out, the requested admissions have not materialized, though plaintiff *239 insists they have. What happened is this: Two liberal extensions of the time for answering the requests were successively given, the first one long after the time limited in the original request, pursuant to the rule, had expired. In the second and final order of extension it was provided that "* * * if the defendants do not comply with the request for admissions by that date (November 30, 1949) each of the matters of which an admission is requested shall be deemed admitted." Though it was not until May 5, 1950, that the answers to plaintiff's request were made, service of the answer was acknowledged by plaintiff as follows: "Service of a copy of the within admissions is hereby acknowledged and filing thereof is consented to as within time, but reserving all rights as to sufficiency and objections." Plaintiff urges that the admissions must be regarded as made because of defendants' breach of the time limitation fixed by the court's last extension. I cannot agree. The default was cured by the consent to filing as within time. I do not see how the consent can be given any other meaning. The reservation as to "sufficiency and objections" does not go to timeliness, for the reason that the untimeliness must have been absolved by the agreed timeliness of the filing. At any rate, the requested admissions that affect the district court judgment are as follows:
"4. At the trial of said action as aforesaid, the Hon. Lewis G. Hansen, Judge of the said District Court, who heard said action stated that he could do nothing other than give a judgment in behalf of the defendant and that he could not set aside said Florida decree of divorce. 5. At the trial of said action as aforesaid, the attorney for the plaintiff asked said Judge to state the reason for said judgment, and said Judge stated that he could not, as Judge of a District Court, declare the Florida decree invalid and that he did not have jurisdiction so to do."
The response to these requests reads:
"The file in the cause does not disclose the truth or falsity of the statements in paragraphs 4 and 5."
Plaintiff contends that Rule 3:36-1 requires a more definite answer than defendants gave and that the admissions should, *240 for that reason also, be taken as made. But the same rule provides that the party whose admission is requested may set forth in detail the reason or reasons why he cannot truly admit or deny. This apparently is what defendants have done; and in dealing with this question in their brief they take the position that the true basis of the district court judgment presents an issue of fact in this controversy.
I think it pertinent to notice just what the situation in the district court was, and I do so for what added reasonableness it may give to the conclusion I have reached as a means of serving the interests of justice. It is my judgment that the dilemma here is genuine, neither fanciful nor captious. In the first place the defendants concede that as matters stand "the truth or falsity" of plaintiff's statement of what occurred is not disclosed. In the second place the strict question of jurisdiction in the district court was raised. Defendants raised it sharply by the proposition asserted in their specification of defenses that the "divorce decree is still in effect and is binding on the plaintiff herein and cannot be attacked collaterally in this Court." If, therefore, after a hearing of the case the district court judge did express himself as completely governed in his decision by a want of jurisdiction and ruled accordingly, that result was in keeping with what defendants had emphatically urged that the court was obliged to do.
There is a further significance, as I see it. If it was not on their legal point of jurisdiction that defendants prevailed, it must have been on either or both of the fact questions raised, a result that would have required the submission of defensive proof. As shown by the specification of defenses, these two fact questions had to do with the pensioner's alleged withdrawal from the fund in his lifetime, and with the matter of notice to plaintiff, as defendant in the divorce suit. (One of defendants' admissions in the present suit is that plaintiff did give testimony in the district court denying such notice.) In the first of these issues the facts would be peculiarly within the knowledge of defendants and readily *241 provable by them if true. Presumably they would consist of simple, unmistakable and dispositive items of record in the files of the fund. One would naturally suppose that sooner or later during this protracted difference between the parties a thing of that import would have been exhibited to plaintiff's counsel as a likely way of ending the controversy. It appears, however, that that was never done; for there was nothing in the oral argument, informal and expansive as that was, nor is there anything in the briefs or pleadings in the present suit, to indicate a reliance upon a defense of that kind. Of course, it may be that the proof was made and is included in the factual basis of the disputed judgment, but that is precisely the uncertainty I am considering. Concerning the other issue of fact the question is, what proof, if any, did defendants submit to refute plaintiff's denial of notice? Such proof, in all probability, would have had to be provided by a person or record, or both, coming from the State of Florida, it being also reasonable to suppose that anything of the sort would be likely to leave some record or trace or to be well enough remembered by the participants in the trial.
We are not dealing here with a matter of altering or amending the judgment record, but only of amplifying or explaining it. Whether plaintiff is right or wrong in her contention is the crux of the issue to be decided. I am convinced that under all the circumstances a denial to plaintiff of an opportunity to prove her position would be too much like a denial of her day in court. More especially since the only defenses in law to her suit in this court are based solely on one or another of the three prior suits as a legal bar to this one.
The subject is not one that can be dealt with collaterally. "A judgment may not be attacked collaterally because it appears from the record or the opinion of the court that there was a mistake, and that the judgment should have been different from that actually rendered, or because of any irregularity in the entry, record or docketing of the judgment * * *." (49 C.J.S. Judgments, § 433.) "The validity of *242 a judgment when collaterally attacked must be tried by an inspection of the record alone and no other or further evidence on the subject is admissible, even though such evidence might be sufficient to impeach the judgment in a direct proceeding against it * * *." (31 Am. Jur., Judgments, par. 602.)
The only course available to plaintiff is a direct proceeding in the district court. See Phipps v. Cervasio, 135 N.J.L. 333 (Sup. Ct. 1947); also Hansen v. DeVita, 76 N.J.L. 330 (Sup. Ct. 1908). "The form of the judgment, however, if a matter of importance, could only be corrected by the court which rendered it." Delker v. Freeholders of Atlantic, 90 N.J.L. 473, 475 (E. & A. 1917). "The fact that the personal membership of a court of record has wholly or in great part changed since the rendition of a judgment, through the retirement of some or all of the judges and the accession of others in their place, affords no reason for denying an application to correct a clerical error in the record of such court * * *." 30 Am. Jur., Judgments, par. 101.
Rule 7:10-2 provides: "For good cause shown the court, upon application and notice to the adverse party, may set aside * * * judgment * * * after trial or hearing. Superior Court Rules 3:59 to 3:62, inclusive, shall govern such application." Rule 3:60-1 provides: "Clerical mistakes in judgments * * * arising from oversight or omission may, at any time except during the pendency of an appeal, be corrected by the court of its own initiative or on the motion of any party and after such notice, if any, as the court orders."
The suit will be stayed for a period to be agreed upon by counsel or fixed by the court, to enable plaintiff to institute the appropriate proceeding. Final ruling will abide the further judgment of the court.